I'd like to reserve, if I may, three to four minutes of my time for rebuttal, and if the court will indulge me, I'd just like to begin with just a very, very brief anecdote. There's a Talmudic story of a family that fell upon hard times. Father needed to find work, and he could only find it in a distant locale. He had saved up all his earnings, he had 100 silver coins, needed to get them back to his family. He asked a traveling merchant, an unscrupulous traveling merchant, would you take these coins back to my family, and the merchant refused. The father offered a deal. He said, look, if you take these back to my family, you can give to my wife all that you want. And so the merchant saw an opportunity for profit and agreed. When he got to the wife's home, he kept 99 coins, gave her the one. The wife, believing that she didn't marry an idiot, asked to have the case heard before the judge of that town. The judge of the town looked at the contract, which had been reduced to writing. He asked the merchant, I want to understand clearly what we have here. You have a written contract, yes? The contract is that you can give to the wife all that you want? He said, that's right. He said, how much do you want? 99. I want to give her one. He said, so what you want is 99, and the contract is you give to her all that you want. So the wife got $99, and the merchant got one. How does that apply to Mr. Pemeny's case? Well, in this case, you have the same set of facts, same group of people, the same amount of money, but you have two different intents. In this case, Mr. Pemeny, a very young man at the time of this offense, probably just a baby, is serving two life sentences, which means he's going to, in all likelihood, die in prison for a case in which several shots were fired, no one was hurt in any way, and there was no proof that he harbored the intent to kill anyone. With regard to the California Penal Code section 664, the requirement, as this court has actually recently held in Juan v. Allen, and as the California Supreme Court has recently held in a case called Peeble v. Concha, does in fact require that each defendant be proved to have the intent to kill another human being. There's also another requirement, and that's personal premeditation and deliberation. The respondent in this case argues that because of the California Supreme Court's decision in Peeble v. Lee, that Mr. Pemeny's conviction may stand because the government or the prosecution wasn't required to prove personal premeditation and deliberation. However, I think if we look closely at the two cases that I just mentioned, Juan v. Allen and Peeble v. Concha, we find that there's something missing here. The prosecution in this case proceeded upon sort of a real mixture of theories, a mixture that missed some important elements of conspiracy and aiding and abetting. As the court knows, a conspiracy conviction would require an agreement, an overt act, and some movement, you know, some proof that the defendant's acts were foreseeable or specifically within the scope of his agreement. If it's an aiding and abetting conviction, it would be necessary for the government to prove that the defendant aided and abetted every element of the offense. In this offense, there would be an intent to kill. That was never proved. The problem is that the attorney in Peeble v. Allen's case is that there was no evidence to prove that the shooter had the intent. And this individual aided and abetted by giving him the gun. Now, isn't that all that's required is the intent of the shooter? No, ma'am. Actually, this court in Juan v. Allen, which is 408 F. 3rd. 1262, faced an almost identical factual situation under California Penal Code 664 and said that, if I can just read, it says, and in that case, the same sort of situation, the defendant in that case was along for the ride. Mr. Pemeni was a passenger, not a driver, not a shooter. He wasn't just along for the ride. He furnished the gun. He did. He did. But that's all that he did. And as I said before, no one was harmed. Eleven casings were found. Three slugs were found. That means the other eight casings presumably flew over the building to point blank range. If there was an intent to kill, I think someone would have at least gotten wounded. But this is what the court said in Juan v. Allen. It is not enough for the prosecution to demonstrate that Juan knew that some criminal activity was afoot on this night or that there was a plan to confront Ramirez and the other people while holding a firearm, which I think was the intent in this case. Rather, the element of knowledge must be proven with respect to first-degree murder and attempted first-degree murder, the specific crimes he was involved in. The record does not reflect any evidence. Mr. Pemeni's knowledge. He has to have the intent to kill. It's clear. In fact, California Supreme Court, post Lee, in a case called People v. Concha, which is at 47 Cal 4653, made it crystal clear that under 664, California Penal Code 664, for an attempted murder that is willful, deliberate, and premeditated, each defendant must have the intent to kill. Each defendant. And there was never any proof of that. As a matter of fact, the prosecutor in this case Each defendant is charged as a principal in the crime? Even as an aider and abetter. So did they overrule Lee? No. So what did they do with Lee? Is Lee just sitting out there? No. They discussed Lee head-on. They said, well, with regards to premeditation and deliberation, that could perhaps be imputed. And I still disagree with that conclusion. But they went one step further and said, well, even if the aider and abetter doesn't personally premeditate, that aider and abetter, in order to be convicted, has to have the intent to kill himself. And the government's theory in Mr. Pemney's case was that he did not. In fact, his defense attorney was precluded from arguing that fact, that he had an intent to kill. And in fact, the government's summation argument says that, look, just as long as he's there along for the ride, he's unsupportive of his homeboys, he's there as a group. That's enough. That is completely contrary to what Concha says, which says that there must be proof of his intent to kill. It's completely contrary to this Court's interpretation of 664 in Juan v. Allen, in which in this case, this Court, under very, very similar facts, found there to be insufficient evidence on a 2254 habeas review, which is obviously, under Jackson, sort of a deferential standard. And then the facts are very similar to that case. There was a confrontation. I mean, when your honors came out, I noticed you were all in the same attire. You were supportive of, I guess, in this case, the common parts of your homeboys or your homegirls. You maybe pushed the end ones of my clothes together, poured water for each other. You were supportive. But at the end of the day, this decision could be a 2-1. One of you may have the intent for Mr. Pemeny's sentence to be affirmed. Two of you might disagree and want it reversed. You might disagree quite sharply, and your intent would be very different. Just because you were supportive of coming here to hear the case doesn't mean that your intent is the same. And in this instance, because he went along, and because there was maybe an agreement to scare some people, which is the situation that this Court addressed in Juan v. Allen, that is not enough by itself to show that Mr. Pemeny had the intent. And that's particularly the case where here, the jury was specifically told they didn't have to find that element. So it's clearly a violation of clearly established Supreme Court precedent. N. Ray Winchette makes it very clear. That's what this Court relied on in Juan v. Allen, to say, look, there needs to be proof. And I still believe that under the other due process cases like Banuelos or cases along that line, Edwards, when I notice the government says, well, those are death cases, Edmonds, death is different. Not really, because in this case, it's just a slower death. Your time is just about up. Okay. I'd like to see a request for a vote if I may, Your Honors. Thirty-nine seconds. Oh, he has five additional minutes. I'm sorry. Oh, all right. I'm sorry. You have a few more minutes. You have a few more minutes if you want to take them. Now, if you want to save them. I'll save them for a vote, Your Honor. Okay. Then you got some time. Okay. Thank you. May it please the Court. I'm Donald Nostratak, Deputy Attorney General for Respondent. Just to clarify from the outset, Petitioner here did not need the intent to kill. And the reason for that is because this was charged, as one of the theories this was charged, it was vicarious liability for acts of co-conspirator. Under that, all he needed was the intent necessary in a conspiracy, which is not the intent to kill. In fact, one of the overt acts and the target crimes of the conspiracy was simply assault with a firearm. And then once the assault with a firearm was committed, clearly the object of that conspiracy was to retaliate against this rival gang. And it's sort of untenable to claim that shooting that gun once you're going to commit an assault with a firearm is not a foreseeable result of that crime. So he was convicted of conspiracy? He was. Absolutely. He was convicted initially of three conspiracies, assault by means likely to produce great bodily injury, assault with a firearm, assault with a semi-automatic firearm, all three relating to the exact same factual scenario. The State Court of Appeal reversed two of those and said that only one of those conspiracies would stand. And the jury was instructed, and with the prosecutor- Can you tell us again exactly which one he was convicted of? Which of those three conspiracies? It's not clear which two. He was convicted of all three by the jury. It's not clear which two the State Court of Appeal reversed. But all three of them, it really doesn't matter, all three of them related to the same act of providing the gun and going there and agreeing to go and retailing it. They just said they were duplicative of one another. Exactly. I said the fact pattern was the same for all three. All right. Now, clearly, if U.S. versus Lee- I mean, not U.S. versus Lee. If the Lee case is the law, then you win. But he says it isn't. That there have been two subsequent decisions that have modified or changed or overruled. He's not sure. Lee? That's incorrect. Lee is still good law. And I think that the reason for that misunderstanding is sort of a conflating premeditation and deliberation with the intent to kill. Those are two different things. What Lee held was that under vicarious liability theory, such as for aiding and abetting, such as in this case for the acts of co-conspirators, that the person who's being vicariously liable need not personally premeditate and deliberate. That was the holding of Lee. That was interpretation of 6600 State law. These other subsequent cases simply show that when you're aiding and abetting, you need to have- you need to share the perpetrator's intent to kill when it's simply an aiding and abetting case. And I can give you the elements here. And they're consistent with both of those cases. For if it was simply instructed as a direct aiding and abetting case, you need to know that the actual perpetrator attempted a premeditated murder. You need to specifically intend to encourage or facilitate that conduct. And you need to actually take acts to so encourage or so facilitate. You have to share the same intent. Exactly. That's when it's charged just as aiding and abetting. And that's for a specific intent to kill. That's different than premeditation and deliberation. Like I said, Lee simply held that under vicarious liability, you don't need to have personal premeditation as long as the perpetrator premeditated. And that's why the latter cases did not overrule Lee. Absolutely correct. Those are two very different things. It's not clear to me exactly with opposing counsel's argument whether he's attacking the sufficiency of the evidence for the premeditation and deliberation or the intent to kill. I think Lee completely forecloses any argument that premeditation and deliberation was lacking because it wasn't needed here under state law. As for his intent to kill, I think that the fact this was charged under the vicarious liability co-conspirator theory forecloses that argument. He didn't need to have the intent to kill. He simply needed to have the intent to enter into this conspiracy. And once he did that, all of these acts that furthered the object of that conspiracy were reasonably foreseeable and were a natural and probable consequence of that conspiracy attached. And here, that's exactly what happened. So even without the intent to kill, the homeboys get together and decide that, hey, we're going to go retaliate against this group. Even if he thought we're just going to go and scare him with these guns, even if he intended to just hand over this gun to use as a threatening device for his buddy to hold out the window and not do anything else, when that gun was fired, that's the natural and probable consequence of that act. Under this case, that's all that's needed. With that, unless there are any further questions, I'm prepared to submit. Well, there was an issue here of whether there was a confrontation clause problem, that you might address that. Sure, absolutely, Your Honor. It relates to the statement that came from the officer who interviewed Mr. Cook, who was the actual shooter in this case that the gunner provided to. The way that came about was on cross-examination by defense counsel in this case. Defense counsel asked the officer, well, when you interviewed the suspects in this case, did any of them tell you that they had the intent to kill? And the officer said, no, none of them told me that. Well, on redirect, the prosecutor said, well, what did they tell you? And the statement that is now being challenged was from Mr. Cook. The officer said, well, Cook said the reason that I shot the gun was because a month or several weeks prior, when I'm pointing a gun at me at a gas station. Now, the initial thing to keep in mind that I think is important in terms of a confrontation clause claim is that the timing of this establishes that it has to be analyzed under Ohio v. Roberts and under the old standard, which simply says that there needs to be indicia of reliability, which is established by the statement following with an affirmative with hearsay exception. Here, I think based on Lilly, it's undoubted that this falls firmly within the statement against interest. This idea that I shot the gun because of this is certainly against Mr. Cook's interest. And I believe that all of the elements based on the briefing that we've done as far as Lilly is concerned overwhelmingly established that this falls squarely within that hearsay exception. Furthermore, to say that this was not harmless error under BRAC would be kind of a stretch. Even assuming that there was error here and this was a confrontation clause violation, there was overwhelming evidence of both Mr. Cook's premeditation and intent to kill and of Petitioner in this case's intent to engage in that conspiracy to satisfy all the elements of the crimes where she was convicted. Unless there are any questions in relation to the confrontation clause issue, I'm prepared to submit as well. Okay, thank you. Thank you. I'm sorry, you have time for rebuttal. I do? Yes. Just briefly, with regard to the 664 issue, counsel's statement is just a flat-out misstatement of the law with regard to this court's decision in Juan v. Allen and in regard to the California Supreme Court case. The case didn't- Let me ask you, was Juan v. Allen a sufficiency of the evidence case or was it a jury instruction case? A sufficiency of the evidence case, Your Honor. Okay. What's the timing? What year did that come down? Juan v. Allen was issued in 2005 and it doesn't purport to create a new rule that wouldn't be applied retroactively. It was just interpreting what the law actually is and then was at the time of Mr. Pemeny's case. Give me the citation to it again, would you? Sure. It's 408F3-1262, and that's 9th Circuit, obviously, 2005. Counsel's statement is completely at odds with that case and with the California Supreme Court's decision in Concha. Concha didn't carve out some exception to Lee. It clarified Lee. And what it clarified was, look, you- Counsel, excuse me. The way you suggest that it clarified Lee would overrule Lee. I didn't mean it to make it sound that way because that's not true. It clarified Lee because I think Lee may be left open with what the government is trying to argue here. Well, maybe that you could- Because premeditation and deliberation, which I still believe under Edmonds in our cases, I still believe that's incorrect, but I think that is the law in California at this time, that that can be imputed. Concha clarified that, well, even if that may be imputed, under no situation can the intent to kill be imputed. That would still have to be found under an aiding and abetting theory or a co-conspirator theory. And in this case, that was exactly the government's theory that they did not have to prove either the premeditation or the intent to kill. So even without Lee, take away Lee, just with Concha, Mr. Pemney's conviction is reversible. And I know the trial court said, well, if I'm wrong about this, he's already done your Jackson or your Brecht, Chapman, whatever standard review court intended to apply. He's already done that for you. He said, if I'm wrong about this, this is definitely a reversal. So that part is sort of squared away. But I want to make clear what Concha does and what it does not do. It doesn't overrule Lee. It just clarifies something that I think was missing and needed to be said. And I think it makes clear that this conviction cannot stand. With regard to the confrontation clause, the Lilly issue, this Court's decision to my briefs in Ford v. Horning said that even under a pre-Crawford analysis, and obviously under this Court's decision in Delgadillo, it's still possible to analyze retroactively Crawford if that's a good idea. This Court's left that open in Delgadillo v. Woodford. But assuming we don't, assuming that this Court analyzes the issue under the old Ohio v. Roberts rule, then under this Court's decision in Ford v. Horning, this still, this type of statement is not an exception under Lilly because of the fact that it is a statement which inculcates not just the declarant, but other people. And that was one of the types of statements that this Court in Ford v. Horning said is not particularly trustworthy. And now that the government on appeal has said, well, it only implicated him himself. Well, that is, as I point out in my briefs, 180 degrees diametrical to what it argued below. That was the linchpin of the government's case below. It told the jury specifically, they should convict based on Cook's statement because that was proof of everyone. They were acting as homeboys supporting each other. Now here they say, well, that statement's not a big deal because it didn't implicate anyone but Cook himself. Well, that certainly is a different tune than what was sung at trial. And so I think that's a very clear issue. But I think even more clear, if the Court just takes a look at those two cases, Lawn v. Allen and Confort, I think in a case where the jury is told, you don't need to consider this person's intent to kill. His defense attorneys precluded from arguing that he didn't have that intent. And then some Confrontation Clause stuff comes in that says that maybe he did. And he's not allowed to argue that he didn't. It seems to me like a no-brainer. But with that, I submit. Okay. All right. Thanks, Sheriff. Thank you. The matter will be submitted.
judges: Ezra, Fletcher B. , Paez